## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| GERALD JOSEPH LOVOI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY, THOMAS A. KENNEDY, TRACY A. ATKINSON, ROBERT E. BEAUCHAMP, ADRIANE M. BROWN, STEPHEN J. HADLEY, LETITIA A. LONG, GEORGE R. OLIVER, DINESH C. PALIWAL, ELLEN M. PAWLIKOWSKI, WILLIAM R. SPIVEY, MARTA R. STEWART, JAMES A. WINNEFELD, JR., ROBERT O. WORK, LIGHT MERGER SUB CORP., and UNITED TECHNOLOGIES CORPORATION,<br><br>Defendants, | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Gerald Joseph Lovoi ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of Raytheon Company ("Raytheon" or the "Company") against Raytheon's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to United Technologies Corporation through its wholly-owned subsidiary Light Merger Sub Corp. (collectively "UTC").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the United States Securities and Exchange Commission ("SEC") on July 17, 2019. The S-4 recommends that Raytheon stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Raytheon is acquired by UTC. The Proposed Transaction was first disclosed on June 9, 2019, when Raytheon and UTC announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Raytheon stockholders will receive 2.3348 shares of the combined company's stock for each share of Raytheon that they hold (the "Merger Consideration"). The deal is expected to close in the first half of 2020.

3.      The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Raytheon management, and the financial analyses conducted by Citigroup Global Markets Inc. ("Citigroup") and RBC Capital Markets, LLC ("RBC"), Raytheon's financial advisors.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Raytheon's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Raytheon's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Raytheon.

6.      Defendant Raytheon is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 870 Winter Street, Waltham, Massachusetts 02451. Raytheon common stock trades on NYSE under the ticker symbol "RTN."

7.      Defendant Thomas A. Kennedy has been CEO and a director of the Company and Chairman of the Board since 2014.

8.      Defendant Tracy A. Atkinson has been a director of the Company since 2014.

9.      Defendant Robert E. Beauchamp has been a director of the Company since 2015.

10.      Defendant Adriane M. Brown has been a director of the Company since 2018.

11.      Defendant Stephen J. Hadley has been a director of the Company since 2009.

12.      Defendant Letitia A. Long has been a director of the Company since 2015.

13.      Defendant George R. Oliver has been a director of the Company since 2013.

14.      Defendant Dinesh C. Paliwal has been a director of the Company since 2016.

15.      Defendant Ellen M. Pawlikowski has been a director of the Company since 2018.

16.      Defendant William R. Spivey has been a director of the Company since 1999.

17.      Defendant Marta R. Stewart has been a director of the Company since 2018.

18.      Defendant James A. Winnefeld, Jr. has been a director of the Company since 2017.

19.      Defendant Robert O. Work has been a director of the Company since 2017.

20.      Defendants Kennedy, Atkinson, Beauchamp, Brown, Hadley, Long, Oliver, Paliwal, Pawlikowski, Spivey, Stewart, Winnefeld and Work are collectively referred to herein as

the "Board."

21.    Defendant United Technologies Corporation is a Delaware corporation with its principal executive offices located at 10 Farm Springs Road, Farmington, Connecticut 06032.

22.    Defendant Light Merger Sub Corp. is a Delaware corporation and is a wholly owned subsidiary of United Technologies Corporation.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

24.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Raytheon is incorporated in this District.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Raytheon common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

27.    This action is properly maintainable as a class action for the following reasons:

4

(a)     The Class is so numerous that joinder of all members is impracticable. As of June 5, 2019, Raytheon had approximately 278.5 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)     Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the S-4 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A.  Background of Company and Proposed Transaction

28.     Raytheon, which was founded in 1922, is a large defense contractor. The Company's business segments include integrated defense systems, intelligence services, missile systems, space and airborne systems, and cybersecurity. Approximately two-thirds of Raytheon's sales are to the U.S. government, specifically the Department of Defense, NASA, the Department of Homeland Security and the Federal Aviation Administration.

29.     On June 9, 2019, the Board entered into the Merger Agreement with UTC.

30.     According to the press release issued on June 9, 2019 announcing the Proposed Transaction:

**Raytheon and United Technologies Aerospace Businesses to Combine in Merger of Equals**

- **Combination will create a premier systems provider with advanced technologies to address rapidly growing segments of aerospace and defense**
- **Expanded technology and R&D capabilities to deliver innovative and cost-effective solutions aligned with customer priorities**
- **Significant near- and long-term benefits expected from uniting complementary portfolios of platform-agnostic capabilities, resulting in more**

6

**than $1 billion of gross annual cost synergies by year four, as well as new revenue opportunities from combined technology**
- **Return of capital to shareowners expected to be $18 to $20 billion in first 36 months following completion of the merger**
- **United Technologies' separation into three independent companies remains on track; merger is expected to be tax-free and close in the first half of 2020, following completion of UTC portfolio separation**

WALTHAM, Mass. and FARMINGTON, Conn., June 9, 2019 – Raytheon Company (NYSE: RTN) and United Technologies Corp. (NYSE: UTX) have entered into an agreement to combine in an all-stock merger of equals. The transaction will create a premier systems provider with advanced technologies to address rapidly growing segments within aerospace and defense. The merger of Raytheon, a leading defense company, and United Technologies, a leading aerospace company, comprised of Collins Aerospace and Pratt & Whitney, will offer a complementary portfolio of platform-agnostic aerospace and defense technologies. The combined company, which will be named Raytheon Technologies Corporation, will offer expanded technology and R&D capabilities to deliver innovative and cost-effective solutions aligned with customer priorities and the national defense strategies of the U.S. and its allies and friends. The combination excludes Otis and Carrier, which are expected to be separated from United Technologies in the first half of 2020 as previously announced.

The combined company will have approximately $74 billion in pro forma 2019 sales. With a strong balance sheet and robust cash generation, Raytheon Technologies will enjoy enhanced resources and financial flexibility to support significant R&D and capital investment through business cycles.

Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Raytheon shareowners will receive 2.3348 shares in the combined company for each Raytheon share. Upon completion of the merger, United Technologies shareowners will own approximately 57 percent and Raytheon shareowners will own approximately 43 percent of the combined company on a fully diluted basis. The merger is expected to close in the first half of 2020, following completion by United Technologies of the previously announced separation of its Otis and Carrier businesses. The timing of the separation of Otis and Carrier is not expected to be affected by the proposed merger and remains on track for completion in the first half of 2020. The merger is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

"Today is an exciting and transformational day for our companies, and one that brings with it tremendous opportunity for our future success. Raytheon Technologies will continue a legacy of innovation with an expanded aerospace and defense portfolio supported by the world's most dedicated workforce," said Tom Kennedy, Raytheon Chairman and CEO. "With our enhanced capabilities, we will deliver value to our customers by anticipating and addressing their most complex

challenges, while delivering significant value to shareowners."

"The combination of United Technologies and Raytheon will define the future of aerospace and defense," said Greg Hayes, United Technologies Chairman and CEO. "Our two companies have iconic brands that share a long history of innovation, customer focus and proven execution. By joining forces, we will have unsurpassed technology and expanded R&D capabilities that will allow us to invest through business cycles and address our customers' highest priorities. Merging our portfolios will also deliver cost and revenue synergies that will create long-term value for our customers and shareowners."

**Combination to Create Long-Term Value**

- Balanced and diversified aerospace and defense portfolio that is resilient across business cycles: The merger establishes a broad and complementary portfolio of platform-agnostic capabilities across the high-growth segments of aerospace and defense, reducing risk of concentration in any individual platform or program.

- Highly complementary technology and R&D platform: With a combined annual company and customer funded R&D spend of approximately $8 billion, seven technology Centers of Excellence, and over 60,000 engineers, the company will develop new, critical technologies faster and more efficiently than ever before. Areas of joint advancement include, but are not limited to: hypersonics and future missile systems; directed energy weapons; intelligence, surveillance, and reconnaissance (ISR) in contested environments; cyber protection for connected aircraft; next generation connected airspace; and advanced analytics and artificial intelligence for commercial aviation.

- Attractive financial profile with strong cash flow generation and balance sheet: Robust free cash flow growth and a strong balance sheet will support continued investment and return of capital to shareowners. The combined company expects to return $18 to $20 billion of capital to shareowners in the first 36 months following completion of the merger. As a result of the combination, the company also expects to capture more than $1 billion in gross annual run-rate cost synergies by year four post-close, with approximately $500 million in annual savings returned to customers. In addition, the combination presents significant long-term revenue opportunities from technology synergies.

- Complementary company culture: The combined company will have a strong performance-based culture focused on integrity, collaboration, innovation, diversity and corporate social responsibility. Employees will have expanded opportunities for career development and advancement in high-growth areas, as well as ongoing engagement in local communities.

**Pro Forma Business Structure**

Raytheon plans to consolidate its four businesses into two businesses to be named Intelligence, Space & Airborne Systems and Integrated Defense & Missile Systems. The new businesses will join Collins Aerospace and Pratt & Whitney to form the four businesses of Raytheon Technologies.

**Pro Forma Capital Structure**

Net debt for the combined company at the time of closing is expected to be approximately $26 billion, with United Technologies expected to contribute approximately $24 billion. The combined company targets an 'A' category credit rating at the time of the closing.

**Leadership and Governance**

The combined company's Board of Directors will be comprised of 15 members, consisting of 8 directors from United Technologies and 7 from Raytheon, with the lead director from Raytheon. Tom Kennedy will be appointed Executive Chairman and Greg Hayes will be named CEO of Raytheon Technologies. Two years following the close of the transaction, Hayes will assume the role of Chairman and CEO.

Raytheon Technologies will be headquartered in the greater Boston metro area, and will retain a corporate presence in existing locations. The company will be led by a highly experienced, proven leadership team with a strong track record of innovation, delivering on synergies, and meeting financial and customer commitments.

**Timing and Closing**

The transaction is subject to the satisfaction of customary closing conditions, including receipt of required regulatory approvals, the approval of Raytheon and United Technologies shareowners, as well as completion by United Technologies of the separation of its Otis and Carrier businesses. As previously mentioned, the transaction is expected to close in the first half of 2020.

## B. The Materially Incomplete and Misleading S-4

31.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Raytheon stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

32.     On July 17, 2019, Defendants filed the S-4 with the SEC. The purpose of the S-4

is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Raytheon stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts

33.    The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of Citigroup's fairness opinion, Citigroup reviewed "certain financial forecasts and other information and data relating to Raytheon, UTC and UTC Remain Co, which were provided to or discussed with Citigroup by the managements of Raytheon and UTC." In connection with the rendering of RBC's fairness opinion, RBC reviewed "certain financial projections and other estimates and data relating to Raytheon prepared by the management of Raytheon" and "certain financial projections and other estimates and data relating to the UTC aerospace businesses prepared by the management of UTC." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that Raytheon's management and UTC's management provided to the Board as well as Citigroup and RBC.

34.    Notably, Defendants failed to disclose the Raytheon financial projections for fiscal years 2019 to 2023 for: (a) cash taxes; (b) capital expenditures; (c) changes in net working capital; (d) stock-based compensation expense; (e) other net operating cash flows; (f) capitalized software development; (g) 2024-2029 cost accounting standards expenses recovery; and (h) 2024-2029 pension contribution. Defendants also failed to disclose the UTC segment financial projections for

the applicable time periods, including sales, EBITDA and EBIT. Defendants also failed to disclose the following UTC segment financial projections:

    a)  Collins Aerospace for 2019 to 2023 for: (i) cash taxes; (ii) capital expenditures; (iii) changes in net working capital; (iv) stock-based compensation expense; (v) 2019-2034 unlevered free cash flows from contractual obligations of Rockwell Collins and Goodrich; (vi) pension adjustments; (vii) any other line items used to calculate unlevered free cash flow; and (viii) unlevered free cash flow;

    b)  P&W Commercial for 2019 to 2064 for: (i) cash taxes; (ii) capital expenditures; (iii) changes in net working capital; (iv) stock-based compensation expense; (v) pension adjustments; (vi) any other line items used to calculate unlevered free cash flow; and (vii) unlevered free cash flow;

    c)  P&W Military and Canada for 2019 to 2027 for: (i) cash taxes; (ii) capital expenditures; (iii) changes in net working capital; (iv) stock-based compensation expense; (v) pension adjustments; (vi) any other line items used to calculate unlevered free cash flow; and (vii) unlevered free cash flow; and

    d)  Unallocated corporate overhead costs for 2019 to 2023 for after-tax free cash flows, and all line items used in the calculation of after-tax free cash flow.

35.    This omitted information is necessary for Raytheon stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Citigroup's Financial Analyses*

36.    With respect to the *Selected Companies Analysis*, the S-4 fails to disclose the individually observed multiples/yields for each of the selected Raytheon comparable public companies analyzed by Citigroup, including: (a) 2019 P/E; (b) 2020 P/E; (c) 2019 FCF Yield; (d)

2020 FCF yield; (e) 2019 FV/EBITDA; (f) 2020 FV/EBITDA; (g) 2019 FV/ FAS/CAS Adj. EBITDA; and (h) 2020 FV/ FAS/CAS Adj. EBITDA. The S-4 also fails to disclose the individually calculated enterprise values and equity values resulting from the application of each of the selected multiple ranges for each of the multiples. Furthermore, the S-4 fails to disclose the individually observed multiples for each of the selected UTC comparable public companies analyzed by Citigroup, including: (a) 2019 P/E; (b) 2020 P/E/; (c) 2019 FV/EBITDA; and (d) 2020 FV/EBITDA. The S-4 also fails to disclose the individually calculated enterprise values and equity values resulting from the application of each of the selected multiple ranges for each of the multiples. Finally, the S-4 fails to disclose whether Citigroup performed any type of benchmarking analysis for Raytheon and/or UTC in relation to the selected public companies.

37.    With respect to the *Raytheon Discounted Cash Flow Analysis*, the S-4 fails to disclose the range of implied terminal EBITDA multiples resulting from Citigroup's analysis. The S-4 further fails to disclose the tax rate utilized by Citigroup in its analysis, as well as the individual inputs and assumptions utilized by Citigroup to derive the discount rate range of 7.0% to 8.1%. Finally, the S-4 fails to disclose the separate resulting enterprise and equity values from Citigroup's DCF analyses for Raytheon Excluding Pension and for Raytheon Pension.

38.    With respect to the *UTC RemainCo Discounted Cash Flow Analysis*, the S-4 fails to disclose the separate resulting enterprise and/or equity values for Collins Aerospace, P&W Military and Canada Business, P&W Commercial Business and unallocated corporate overhead costs. The S-4 further fails to disclose the resulting ranges of implied terminal EBITDA multiples resulting from Collins Aerospace, P&W Military and Canada Business, P&W Commercial Business and unallocated corporate overhead costs, where applicable. In addition, the S-4 fails to disclose the individual inputs and assumptions utilized by Citigroup to derive the discount rate

range of 2.5% to 3.5% for Collins Aerospace, 8.1% to 9.4% for P&W, and 7.9% to 9.1% for unallocated corporate overhead costs. Finally, the S-4 fails to disclose the amount of FV adjustments made to UTC RemainCo to derive the aggregate equity value range.

### *Materially Incomplete and Misleading Disclosures Concerning RBC's Financial Analyses*

39.     With respect to the *Selected Public Companies Analysis*, the S-4 fails to disclose the individually observed multiples for each of the selected Raytheon comparable public companies analyzed by RBC, including 2019 EV/EBITDA and 2020 EV/EBITDA. The S-4 also fails to disclose the individually observed multiples for each of the selected UTC comparable public companies analyzed by RBC, including 2019 EV/EBITDA and 2020 EV/EBITDA.

40.     With respect to the *Raytheon Discounted Cash Flow Analysis*, the S-4 fails to disclose the individual inputs and assumptions utilized by RBC to derive the discount rate of 7.0% to 8.0%. The S-4 further fails to disclose the range of implied terminal EBITDA multiples resulting from the analysis. In addition, the S-4 fails to disclose the separate concluded values of Raytheon, excluding CAS, and CAS net of pension contributions.

41.     With respect to the *UTC Aerospace Businesses Discounted Cash Flow Analysis*, the S-4 fails to disclose the separate resulting enterprise and/or equity values for Pratt & Whitney's commercial engine business, Pratt & Whitney's Canada and military business, UTC RemainCo's Collins aerospace business, and corporate costs and eliminations related to UTC's Aerospace business. The S-4 also fails to disclose the ranges of implied terminal EBITDA multiples resulting from each of UTC's segments, where applicable. Further, the S-4 fails to disclose the individual inputs and assumptions utilized by RBC to derive the discount rates of 8.0% to 9.0% for P&W, 8.0% to 9.0% for Collins Aerospace, and 8.0% to 9.0% for corporate costs and eliminations. Finally, the S-4 fails to disclose the value of Collins Aerospace contract losses from certain UTC

acquisitions used by RBC in the analysis.

*Materially Incomplete and Misleading Disclosures Concerning the Sales Process*

42.    The S-4 also fails to disclose material information concerning the sales process. For example, throughout the process Citigroup and RBC provided preliminary analyses to the Board, yet those analyses were not disclosed. This includes: the various aspects of UTC's aerospace businesses Citigroup reviewed with the Board on September 27, 2018 and November 14, 2018; the preliminary analyses regarding the valuation of Raytheon and UTC RemainCo Citigroup discussed with the Board on March 20, 2019; the certain valuation matters and overview of Citigroup's preliminary financial analyses of Raytheon and UTC RemainCo as discussed with the Board on April 28, 2019; the certain preliminary financial analyses regard the Proposed Transaction that Citigroup reviewed with the Board on May 30, 2019; and the certain preliminary financial analyses that RBC reviewed with the Board on June 5, 2019.

43.    Citigroup met with UTC's financial advisor, Morgan Stanley, on numerous occasions. At some meetings the two financial advisors discussed valuation matters, yet those valuation discussions were not disclosed. This includes the valuation matters discussed on January 11, 2019, January 17, 2019, January 31, 2019 and February 5, 2019; the preliminary discussion regarding valuation, including methodologies for valuing Raytheon and UTC's aerospace businesses, as discussed on February 27, 2019; the discussions regarding the valuation of Raytheon and UTC's aerospace businesses as discussed between March 18, 2019 and March 22, 2019; and the discussions through April 2019 of the valuation of Raytheon and UTC's aerospace businesses that included members of management for Raytheon and UTC.

44.    On January 21, 2019, Defendant Kennedy met with members of UTC's management to discuss the Proposed Transaction. The parties discussed a potential transaction structure, but the S-4 fails to disclose details of the potential transaction structure discussed.

14

45.    On June 4, 2019, three members of the Board had dinner with three members of the UTC board of directors, along with the companies' respective CEOs. The S-4 does not disclose which members of the Board attended the dinner.

46.    Citigroup's fairness opinion notes that Citigroup acted as joint lead arranger and joint bookrunner for UTC on a $2.0 billion revolving credit facility and $4.0 billion term credit facility, and acted as a lender to UTC. Yet the fairness opinion only speaks of fees received from investment banking services. The S-4 fails to disclose the fees received by Citigroup from UTC for the services described above.

47.    RBC's fairness opinion notes that RBC received $7 million from Raytheon when it delivered the fairness opinion. Citigroup received $10 million upon delivery of its fairness opinion, with another $58.5 million due when the merger closes. The S-4 does not disclose the basis for paying Citigroup $3 million more for its fairness opinion.

48.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Raytheon stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

49.    In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

50.    Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to

do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

51.     Further, the S-4 indicates that on June 8, 2019, Citigroup and RBC reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of written opinions dated June 8 and 9, 2019, to the effect that the Merger Consideration was fair, from a financial point of view, to Raytheon stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Citigroup's and RBC's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

52.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Defendants have filed the S-4 with the SEC with the intention of soliciting Raytheon stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

55.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Raytheon, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

56.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

57.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Raytheon shares and the financial analyses performed by Citigroup and RBC in support of their fairness opinions; and (iii) the sales process.

58.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Citigroup and RBC reviewed and discussed their financial analyses with the Board during various meetings including on June 8, 2019, and further states that the Board relied upon Citigroup's and RBC's financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been

omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

59.    The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

60.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.    The Individual Defendants acted as controlling persons of Raytheon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Raytheon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62.    Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the

18

statements to be corrected.

63.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

64.    In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and his counsel as Class counsel;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Raytheon stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

C.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 26, 2019                          **RIGRODSKY & LONG, P.A.**

                                         By:   */s/ Gina M. Serra*
                                               _____
**OF COUNSEL:**                                Brian D. Long (#4347)
                                               Gina M. Serra (#5387)
**ROWLEY LAW PLLC**                            300 Delaware Avenue, Suite 1220
Shane T. Rowley                                Wilmington, DE 19801
Danielle Rowland Lindahl                       Telephone: (302) 295-5310
50 Main Street, Suite 1000                     Facsimile: (302) 654-7530
White Plains, NY 10606                         Email: bdl@rl-legal.com
Telephone: (914) 400-1920                      Email: gms@rl-legal.com
Facsimile: (914) 301-3514

                                               *Attorneys for Plaintiff*

21